# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DEREYK L. MORRIS,** : | |
| **Plaintiff** : | |
| : | No. 2:21-CV-1338 |
| v. : | |
| : | **Judge Eddy** |
| **SUPERINTENDENT MICHAEL** : | |
| **ZAKEN, DEPUTY STEPHEN BUZAS,** : | **Electronically Filed Document** |
| **CAPTAIN KENNEDY, MAJOR** : | |
| **SWITZER, CAPTAIN KINTEMYER,** : | |
| **LIEUTENANT JUAREZ, C/O 1** : | |
| **FERGUSON, C/O 1 STEWART,** : | |
| **SECRETARY JOHN E. WETZEL,** : | |
| **JOHN/JANE DOES 1-3** *and* **DEPUTY** : | |
| **MARK DIALESANDRO,** : | |
| **Defendants** : | |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendants Secretary John Wetzel[1], Deputy Superintendent Stephen Buzas, Deputy Superintendent Mark Dialesandro, Captain Eric Hintemeyer, Lieutenant Osmilt Juarez, Captain Robert Kennedy, Corrections Officer Jacob Stewart, Major Martin Switzer and Superintendent Michael Zaken ("Corrections Defendants")[2], by and through their counsel, hereby file this Brief in Support of Their Motion to Dismiss:

---

[1] Plaintiff has brought suit against Defendant Wetzel in both his official and his personal capacities. Compl., ¶15. However, Defendant Wetzel retired from his position with the Department of Corrections on October 1, 2021. A retiree cannot have a suit in his official capacity continue against him; rather, a current official must be substituted in his place. Hafer v. Melo, 502 U.S. 21, 25 (1991). The Department is currently headed by Acting Secretary George Little. Therefore, to the extent that any claims against Defendant Wetzel in his official capacity survive this Motion, Acting Secretary George Little must be substituted as a Defendant.

[2] For clarity, the undersigned does not represent Defendants Ferguson or John Does 1-3, and this Motion is not brought on their behalf.

1

I.    **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Dereyk L. Morris ("Plaintif") is an inmate at SCI-Greene. Compl., ¶3. Plaintiff alleges that he has been confined to the restricted release list ("RRL") for over three years, despite allegedly having no misconduct reports or infractions. Compl., ¶53. His Complaint arises from an incident which took place on April 30, 2021. Compl., ¶17. On that date, Plaintiff alleges that he and several other inmates were outside using the recreational yard when another inmate, Devon Smith, got into a verbal altercation with several correctional officers, including Defendants Stewart, Ferguson, and Addamson. Compl., ¶18. The dispute allegedly continued as inmate Smith moved inside the facility, at which point Defendant Ferguson discharged a canister of oleoresin capsicum spray ("OC spray") on inmate Smith. Compl., ¶28. When Plaintiff and other inmates verbally protested and threatened to file written grievances, Defendant Ferguson allegedly used the OC spray on Plaintiff and others. Compl., ¶¶29-30. At this time, other corrections officers arrived to assist with controlling the scene and tending to inmate Smith, before providing assistance to Plaintiff and others who had been allegedly hit with the OC spray. Compl., ¶¶37-39. At this time, Plaintiff alleges that he informed Defendant Juarez and medical staff that he wanted to file a formal abuse allegation against Defendant Ferguson. Compl., ¶40. A strip search was then allegedly performed upon Plaintiff because of reports that inmate Smith had an item of contraband (a bottle) while at yard. Compl., ¶¶41, 42, 43, and 47. After the incident, Plaintiff allegedly filed written complaints for violations of prison policies. Compl., ¶51.

Based upon his long-term placement on the RRL, the events of April 30, 2021, and the alleged failure of individuals in higher positions to properly train or supervise certain Defendants, Plaintiff has now brought a ten count complaint ten individual defendants and three John Doe defendants alleging various constitutional violations as well as state law tort claims. The counts and defendants are as follows: (1) First Amendment retaliation (Defendants Ferguson and Juarez);

2

(2) Eighth Amendment excessive force (Defendant Ferguson); (3) Eighth Amendment failure to train/supervise (Defendants Zaken, Buzas, Dialesandro, Kennedy, Kintemyer, and Juarez); (4) Eighth Amendment deliberate indifference (Defendants Wetzel and John Does 1-3); (5) Eighth Amendment failure to protect (Defendant Stewart); (6) Fourteenth Amendment due process (all Defendants but Stewart); (7) Assault and battery (Defendant Ferguson); (8) Intentional infliction of emotional distress (Defendants Wetzel, John Does 1-3, Ferguson, Stewart, Juarez, Kintemyer, Zaken, Buzas, and Dialesandro); (9) Conspiracy (all Defendants); and (10) Negligence (all Defendants).

## II.     STANDARD OF REVIEW

In ruling on a motion to dismiss pursuant to Fed.R.Civ.P 12(b)(6), the Court must "accept all factual allegations [in the complaint] as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57, 570 (2007) (rejecting the "no set of facts" standard").  The plaintiff must "nudge [his or her] claim across the line from conceivable to plausible" in order to survive a motion to dismiss. Phillips, 515 F.3d at 234, citing Twombly, 127 S.Ct. at 1974.  This plausibility requirement means that the complaint must provide enough factual matter to suggest the required element of the claim. Id.  In other words, it calls for "enough facts to state a claim to relief that is plausible on its face." Barber v. PSP, 2007 WL 2071896, *2 (W.D. Pa. 2007) citing Twombly at 1974.  The Court need not accept legal conclusions or inferences drawn by plaintiff if unsupported by the facts set forth in the complaint.   Barber, *2, citing California Pub. Employee Ret. Sys. v. Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) and Twombly at 1965; Ashcroft v. Iqbal, 556 U.S. 662 (2009).

*Pro se* pleadings are construed more liberally than pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520-521 (1972). Notwithstanding this liberality, *pro se* pleaders are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. See, e.g., Taylor v. Books A Million, Inc., 296 F.3d 376, 378, (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

### III. ARGUMENT

#### A. Plaintiff's Claims Under Section 1983 Against Defendant Wetzel in His Personal Capacity Must Fail for Lack of Allegations of Personal Involvement

As noted in Footnote 1, *supra*, Plaintiff has brought this action against all Defendants, including Defendant Wetzel, in both their official and personal capacities. To the extent the allegations against Defendant Wetzel are in his official capacity, Acting Secretary George Little must be substituted as a defendant for any surviving claims. Hafer v. Melo, 502 U.S. 21, 25 (1991). To the extent Plaintiff is bringing Section 1983 claims against Defendant Wetzel in his personal capacity, those claims must fail because Plaintiff has not alleged any affirmative personal involvement by Defendant Wetzel. It is well settled that to establish personal liability against a defendant in a Section 1983 action, a defendant must have personal involvement in the alleged wrongs. That is, the state actor must have played an affirmative part in the alleged misconduct in order to be subject to liability. Rizzo v. Goode, 423 U.S. 362 (1976); Chavarriaga v. New Jersey Department of Corrections, 806 F.3d 210, 222 (3d Cir. 2015); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chincello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986); Alexander v. Fritsch, 2010 WL 1257709 at *15 (W.D. Pa. 2010). It is insufficient to survive a motion to dismiss for a complaint to merely hypothesize about a defendant's personal involvement without any factual allegations to support the hypothesis. Nor is a court required to assume that the plaintiff

can use the discovery process to prove facts not alleged. Evancho v. Fisher, 423 F.2d 347, 353-354 (3d Cir. 2005).

Here, the counts pertaining to Section 1983 claims in which Plaintiff has named Defendant Wetzel are Count IV (Eighth Amendment deliberate indifference) and Count VI (Fourteenth Amendment due process). However, Plaintiff's allegations against Defendant Wetzel are impermissively vague and devoid of any allegations of actual, affirmative action on the part of Defendant Wetzel. Specifically, Plaintiff's claims against Defendant Wetzel relate to his continued placement on the RRL. The sum of Plaintiff's allegations against Defendant Wetzel are as follows: Defendant Wetzel is the only person who can impose or remove an RRL designation (Compl., ¶87); the annual review process for an RRL designation is a "sham" (Compl., ¶91); Defendant Wetzel is aware of literature related to the alleged detrimental effects of prolonged segregation (Compl., ¶95); and Defendant Wetzel has placed a "covert agenda over inmates" (Compl., ¶99). Not only are most of these allegations pure speculation, they are also not evidence of affirmative actions taken by Defendant Wetzel to deny Plaintiff due process, nor are they evidence of deliberate indifference toward him.

Even if the Court considers that the allegations constitute affirmative action, with respect to the deliberate indifference claim, the Plaintiff still has failed to state a claim. "Deliberate indifference" requires obduracy and wantonness that constitutes recklessness or a conscious disregard of a serious risk. Rouse v. Plantier, 182 F.3d 192, 197 (citing Farmer v. Brennan, 511 U.S. 825, 842 (1994)). The standard for deliberate indifference is subjective: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. To plead deliberate indifference, a plaintiff must show that each particular defendant was "aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists, and … must also draw the inference." Malles v. Lehigh Cty., 639 F.Supp.2d 566, 579 (E.D. Pa. 2009) (citing Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997)).  Here, Plaintiff has not plead facts showing a substantial risk of harm, let alone that Defendant Wetzel perceived such a risk and disregarded it.

To the extent that Plaintiff is claiming that placement on the RRL and housing in the restricted housing unit ("RHU") itself creates a serious risk of harm, it is well settled that such conditions are permissible.  Placement in the restricted housing unit, without more, does not violate the Eighth Amendment. See, e.g., Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997) (holding that the restrictive conditions in administrative custody in the Pennsylvania state correctional institutions, in and of themselves, do not violate the Eighth Amendment); Fortson v. Kelchner, 2009 WL 693247, at *3 (W.D. Pa. 2009) (granting Defendants' motion to dismiss as to Plaintiff's Eighth Amendment claim regarding confinement in the RHU and SMU); Ball v. Beard, 2011 WL 1304621 at *3 (M.D. Pa. 2011).  It is well-established that there is no constitutional right for an inmate to be celled in a particular place, or under particular circumstances.  "[B]y virtue of their convictions, inmates must expect significant restrictions, inherent in prison life, on rights and privileges free citizens take for granted." McKune v. Lile, 536 U.S. 24, 39-40 (2002); Podhorn v. Grondolsky, 350 Fed. Appx. 618, 620 (3d Cir. 2009) ("[P]risoners have no constitutional right to be assigned to a particular institution, facility or rehabilitative program.").  Rather, "the prison has a penological interest in the housing placement of its inmates and '[i]t is well settled that the decision where to house inmates is at the core of prison administrators' expertise.'" Thomaston v. Meyer, 519 Fed. Appx. 118, 119 (3d Cir. 2013) (quoting McKune, 536 U.S. at 39).

For these reasons, Counts IV and VI should be dismissed as to Defendant Wetzel in his personal capacity.

### B.   Plaintiff's First Amendment Retaliation Claim Against Defendant Juarez (Count I) Must Fail Because Plaintiff Does Not Allege He Was Engaged in Constitutionally Protected Activity

Plaintiff alleges in Count I that Defendant Juarez retaliated against him by conducting a strip search when Plaintiff informed him that he wanted to make a formal abuse allegations against Defendant Ferguson.  Compl., ¶¶40-45, 112.

To establish a claim for retaliation, an inmate must demonstrate: (1) that he engaged in constitutionally protected conduct; (2) that an adverse action was taken against him by a prison official; and (3) that there is a causal connection between the exercise of his constitutional rights and the adverse action. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003); Rauser v. Horn, 341 F.3d 330 (3d Cir. 2001); Davis v. Harlow, 2014 WL 4250382 at *4 (W.D. Pa. 2014); Laurensau v. Pluck, 2013 WL 4779010 at *10 (W.D. Pa. 2013).  Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner.  Laurensau at *11 (citing Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) and Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995)).

Not all communications between an inmate and a corrections officer are constitutionally protected speech.  A general statement made to a prison official is not constitutionally protected conduct.  Knight v. Wilson, 2014 WL 1316115 at *9 (W.D. Pa. 2014).  Further, while filing a grievance is constitutionally protected activity that can give rise to a retaliation claim, the mere *threat* of filing a grievance is not constitutionally protected activity and does not satisfy the first element of a retaliation claim.  Ortiz v. Baird, 2013 WL 1290555 at *8-9 (W.D. Pa. 2013); Clay v. Overmyer, 2015 WL 630379 at *4 (W.D. Pa. 2015); Griffin–El v. Beard, 2013 WL 228098, at *8 (E.D. Pa. 2013). See Stewart v. Varano, 2011 WL 3585409, at * 1 (M.D. Pa. 2011); Hunter v. Bledsoe, 2010 WL 3154963, at *4 (M.D. Pa. 2010); Bendy v. Hutler, 2007 WL 87632, at * 2 (D.

7

N.J. Jan.9, 2007), aff'd, 341 F. App'x 799 (3d Cir. 2009); see also Bridges v. Gilbert, 557 F.3d 541, 554-55 (7th Cir. 2009) ("it seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance") (emphasis in original).

Here, Plaintiff has failed to allege facts sufficient to show that he was engaged in constitutionally protected activity with respect to Defendant Juarez. At best, he alleges that he told Defendant Juarez he wanted to make an abuse allegations against Defendant Ferguson. Compl., ¶40. Even if this is considered a threat, not only was it not directed at Defendant Juarez, but, as demonstrated by the foregoing case law, threats to file grievances are not constitutionally protected activity. Without being able to satisfy the first prong[3] of his First Amendment retaliation claim, Count I must be dismissed as to Defendant Juarez.

### C. Plaintiff's Claim for Failure to Train and/or Supervise (Count III) Must Fail

Plaintiff's Count III is for failure to properly train and supervise against Defendants Zaken, Buzas, Dialiesandro, Kennedy, Kintemyer, and Juarez, and it is broken into two parts. Compl., ¶¶117-121. First, he makes a claim against all of these Defendants for failure to train and supervise Defendant Ferguson with respect to the use of the OC spray. Compl., ¶118. Second, he makes a claim against all of these Defendants except Defendant Juarez for the failure to train and supervise Defendant Juarez with respect to the strip search. Compl., ¶120.

---

[3] Defendants do not concede that Plaintiff would be able to satisfy the other prongs. In particular, Plaintiff has failed to show that he suffered an adverse action. While he appears to allege that the strip search itself is an adverse action, the Supreme Court has made clear that strip searches are permissible in prisons as long as they are performed in a reasonable manner. Bell v. Wolfish, 441 U.S. 520, 559-560, (1979). Even routine strip searches of inmates have been found to support a legitimate penological interest in maintaining institutional security. See e.g., Cook v. Corbett, 2015 WL 4111692, at *5 (E.D. Pa. July 8, 2015). Plaintiff's own allegations demonstrate that the strip search was performed because an inmate Smith had contraband – a bottle – in the yard at the time of the initial confrontation. Compl., ¶¶42, 47.

Generally, there is no supervisory liability in a §1983 action. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). For a supervisory official to be liable, it "is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did." Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989). Rather, a plaintiff must "identify specifically what it is that [the supervisor] failed to do that evidences his deliberate indifference. Only in the context of a specific defalcation on the part of the supervisory official can the court assess whether the official's conduct evidenced deliberate indifference and whether there is a close causal relationship between the 'identified deficiency' and the 'ultimate injury.'" Sample, 885 F.2d at 1118. In other words, the supervisory official must have had actual knowledge of the wrongful conduct, not constructive knowledge. Chavarriaga, 806 F.3d at 222. There is no respondeat superior liability under §1983. Id.; Rizzo v. Goode, 423 U.S. 362 (1976); Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

Moreover, a supervisor has no affirmative constitutional duty to train, supervise, or discipline subordinates to prevent the subordinates from engaging in unconstitutional conduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). When there are no allegations of prior patterns of misconduct, no inference that the defendant official was aware of a specific and substantial risk of impending injury sufficient to allege deliberate indifference can be drawn. Chinchello, 805 F.3d at 134 n.9. Further, to be liable as a "policymaker", the official had to have established or enforced policies and practices directly causing the constitutional violation. Chavarriaga at 223.

To prevail on a failure to train theory, plaintiff must show that the failure to train constituted deliberate indifference. City of Canton v. Harris, 489 U.S. 378 (1989). The deliberate indifference standard is only met if "the need for more or different training is so obvious, and the inadequacy

9

[is] so likely to result in the violation of constitutional rights." City of Canton, 489 U.S. at 390. The supervisor responsible for the training may be held individually liable only if the failure to train a subordinate employee caused the deprivation in the plaintiff's constitutional rights, the failure to train amounted to deliberate indifference, and the failure to train was closely related to the plaintiff's injury. Pressley v. Huber, 562 Fed. Appx. 67, 69 (3d Cir. 2014) (citing Green v. Branson, 108 F.3d 1296, 1302 (10th Cir. 1997) and Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir. 1996)).

Here, Plaintiff's allegations wholly fail to rise to the level of specificity needed to make a *prima facie* claim of failure to train or supervise. Not only does he appear to be making general supervisor liability claims against all of the Defendants in Count III (Compl., ¶¶56, 58-59, 61-62, 64-65, 68-69, 71-72) – claims which the foregoing authority makes clear are meritless – but any specific alleged failures against all Defendants except Defendant Juarez occurred *after* his alleged injury. In other words, he alleges that the evidence of a failure to train and supervise is that nothing was done to discipline the corrections officers once Plaintiff filed a written grievance *after* the April 30, 2021, incident. Compl., ¶¶57, 60, 63, 67, 70. Therefore, it is impossible for him to demonstrate a causal relationship between the failure to train or supervise and the Plaintiff's alleged injuries. With respect to the allegations against Defendant Juarez related to an alleged failure to supervise Defendant Ferguson, Plaintiff's allegations make clear that Defendant Juarez was not present when the OC spray was used. Compl., ¶36 ("Soon after [the OC spray was used], several staff to include Defendant Juarez entered the yard asking what happened…"). Without any other specific allegations of failure to train against Defendant Juarez, Plaintiff is left with an implied general supervisory liability claim, which is completely inadequate to state a claim.

In light of the foregoing, Count III must fail in its entirety.

### D. Plaintiff's Claim for Failure to Protect Against Defendant Stewart (Count V) Must Fail

While prison officials have a constitutional duty to take reasonable measures to protect prisoners from violence at the hands of other prisoners, that same deliberate indifference standard applies in the specific claim of failure to protect. To state a valid Eighth Amendment Failure to Protect Claim, the inmate must prove that 1) the officer had a duty to intervene, 2) the officer had the opportunity to intervene, and 3) the officer failed to intervene by disregarding a substantial risk of serious harm to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Smith, 293 F.3d at 650-651 (3d Cir. 2002). Additionally, Plaintiff has the burden of providing evidence of these requirements. Ledcke v. PA DOC, 2014 WL 12638878 at *6 (M.D.Pa. 2014) (quoting Gainor v. Douglas Cty., Ga., 59 F.Supp.2d 1259, 1289 (N.D.Ga. 1998)).

The inmate must show that the prison official knew of and disregarded an excessive risk to inmate health or safety. The official must not only have been aware of facts from which the inference could have been drawn that a substantial risk of serious harm existed, but must have actually drawn the inference. Hamilton v. Leavy, 117 F.3d 742, 476 (3d Cir. 1997); Bistrian v. Levi, 696 F.3d 352, 367-68 (3d Cir. 2012); Joyner v. D.C., 2009 WL 2224757 (M.D. Pa. 2009); Jones v. Day, 2007 WL 30195 (W.D. Pa. 2007). Prison officials who act "reasonably" cannot be found liable in a failure to protect claim. Bistrian, 696 F.3d at 367-68.

Here, Plaintiff's allegations do not state a claim against Defendant Stewart for failure to protect. The allegations concerning his involvement in the entire incident are: that he was involved with the conversation with inmate Smith; that he "giggled" while holding a door open for inmate Smith to walk through; that he did nothing while Defendant Ferguson used OC spray first on inmate Smith and then in the direction of other inmates, including Plaintiff; and that he ran back inside with Defendant Ferguson laughing. Compl., ¶¶18, 22, 35, and 126. Plaintiff asks the Court

11

to infer that the "giggle" is evidence that Defendant Stewart was aware of what was going to happen. However, it is not reasonable to draw this inference on the facts as pled. Plaintiff makes no allegations that Defendant Ferguson informed Defendant Stewart of any alleged plan to use OC spray, such that Defendant Stewart would have been aware of a substantial risk of harm that he thereafter disregarded. Further, Plaintiff makes no allegations that Defendant had an opportunity to intervene in the alleged discharge of OC spray – he does not describe the duration of the alleged attack, or whether Defendant Stewart was in the room or close enough the intervention was possible.

Because Plaintiff has failed to plead facts sufficient to show that Defendant Stewart was aware of a risk of substantial harm, and that he had an opportunity to intervene even if he was aware of the risk, Plaintiff's Count V against Defendant Stewart for failure to protect must be dismissed.

    **E.**    **Plaintiff's Count VIII for Intentional Infliction of Emotional Distress Must Fail Because Plaintiff Has Failed to Allege Sufficiently Extreme, Outrageous, and Intentional Conduct**

In Count VIII, Plaintiff makes a claim for intentional infliction of emotional distress resting primarily on two theories. First, Defendant Wetzel and Defendants John Does 1-3 "failed to exercise reasonable care" when they placed Plaintiff on the RRL, despite allegedly knowing the potential for serious harm. Compl., ¶140. Second, Plaintiff alleges that Defendants Buzas, Zaken, Dialesandro, Juarez, Kintemyer, and Stewart are liable because they "tried to circumvent or ignore the sexual harassment of Juarez, the assault by Ferguson, the investigation of both and denied his request to pursue criminal charges." Compl., ¶141.

The elements of intentional infliction of emotional distress are: (1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; (4) that distress must be severe. Doe v. Liberatore, 478 F.Supp.2d 742, 765 (M.D. Pa. 2007) (citing

12

Hoy v. Angelone, 691 A.2d 476, 482 (Pa. Super. 1997)).  Plaintiff's allegations in Count VIII fail to rise to the level necessary to state a claim for intentional infliction of emotional distress.  First, his allegations against Defendant Wetzel and John Does 1-3 sound in negligence: "failed to exercise reasonable care."  There are no allegations that these Defendants acted intentionally or recklessly, let alone that such conduct was extreme or outrageous.  Similarly, the allegations against the other Defendants merely accuse them of not doing anything about the alleged OC spray incident and the strip search, as well as a denial of a request to press criminal charges.  None of this conduct can be considered "extreme and outrageous."  As such, Count VIII should be dismissed for failure to state a claim.

> **F.  Plaintiff's Claim for Conspiracy Must Be Dismissed Because There Are No Allegations Supporting an Express or Implied Agreement Between the Defendants**

To state a claim for civil conspiracy, a plaintiff must prove that: (1) a combination of two or more persons acted with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage.  Williams v. Western Wayne School District, 2013 WL 4718920 at *8 (citing Phillips v. Selig, 959 A.2d 420, 437 (Pa. Super. 2008)).  "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred."  D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1377 (3d Cir.1992); see also Startzell v. City of Philadelphia, 533 F.3d 183, 205 (3d Cir.2008) (stating that a conspiracy requires a "meeting of the minds") (further citation omitted).  This holding remains good law following Twombly and Iqbal, which, in the conspiracy context, require "enough factual matter (taken as true) to suggest that an agreement was made," in other words, "plausible grounds to infer an agreement."  Twombly, 550 U.S. at 556.

13

Here, Plaintiff alleges that there are four conspiracies: (i) between Defendants Ferguson and Stewart to use excessive force through the use of OC spray; (ii) between Defendant Juarez and "others" to attempt to cover up the use of excessive force by using a strip search; (iii) between Defendants Zaken, Buzas, Dialesandro, Kennedy, Switzer, and Kintemyer to cover up Defendant Juarez's sexual harassment and Defendant Ferguson's use of force; and (iv) between Defendants Wetzel and John Does 1-3 to "oppress" Plaintiff by keeping him on the RRL.  Compl., ¶¶144-147.  However, Plaintiff has made no allegations from which express or implied agreements to do any of the actions forming the basis of the conspiracy.  Specifically, the only evidence of the first conspiracy is that Defendants Ferguson and Stewart allegedly laughed and giggled immediately before and after the use of the OC spray.  For the second alleged conspiracy, Plaintiff fails to even identify the parties to the agreement – rather, he merely says it was between Defendant Juarez and "others."  For the last two conspiracies, there is no evidence from which a factfinder could reasonably infer that there was an agreement between any of the Defendants.  Plaintiff was not a witness to any communications between those Defendants.  His only evidence for an agreement between Defendants are the alleged results of the agreement – the failure he perceives to punish Defendants Ferguson and Juarez, and his remaining on the RRL.  At best, this demonstrates the third prong of actual legal damage (Corrections Defendants do not concede this point).  However, it does nothing to support an inference that an agreement was made between any of the Defendants such that the first prong is satisfied.

Because Plaintiff cannot satisfy the first prong of a civil conspiracy claim, Count IX should be dismissed as to all Corrections Defendants.

### G.   Plaintiff's Claim for Negligence Must Be Dismissed as to Defendant Wetzel Because Plaintiff Has Failed to Allege the Existence of a Duty

Plaintiff's claim for negligence is flawed as to Defendant Wetzel because, while using the negligence terminology of "failed to use reasonable care," Plaintiff does not identify any specific duty that Defendant Wetzel breached.  Plaintiff appears to argue that Defendant Wetzel had a duty to remove Plaintiff from the RRL, but, as has been established earlier, placement in the restricted housing unit, without more, does not violate the Eighth Amendment. See, e.g., Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997) (holding that the restrictive conditions in administrative custody in the Pennsylvania state correctional institutions, in and of themselves, do not violate the Eighth Amendment).  If placement on the RRL does not violate the Eighth Amendment, it would defy logic to impose a duty to remove an inmate from the RRL.  Therefore, because Plaintiff cannot show the existence of a duty to remove Plaintiff from the RRL, his negligence claim must fail as to Defendant Wetzel.

## IV.   CONCLUSION

WHEREFORE, it is respectfully requested that this Court grant this Motion.

Respectfully submitted,

JOSH SHAPIRO
Attorney General

By:   *s/ Michael P. Gaetani*
MICHAEL P. GAETANI
Deputy Attorney General
Attorney ID 209407

Office of Attorney General
1251 Waterfront Place
Mezzanine Level
Pittsburgh, PA 15222
412.339.2310
mgaetani@attorneygeneral.gov

Counsel for Defendant

Date:  March 4, 2022

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEREYK L. MORRIS,** | : | |
| **Plaintiff** | : | |
| | : | No.  2:21-CV-1338 |
| v. | : | |
| | : | **Judge Eddy** |
| **SUPERINTENDENT  MICHAEL ZAKEN, DEPUTY STEPHEN BUZAS, CAPTAIN KENNEDY, MAJOR SWITZER, CAPTAIN KINTEMYER, LIEUTENANT JUAREZ, C/O 1 FERGUSON, C/O 1 STEWART, SECRETARY JOHN E. WETZEL, JOHN/JANE DOES 1-3** *and* **DEPUTY MARK DIALESANDRO,** | : | **Electronically Filed Document** |
| **Defendants** | : | |

**CERTIFICATE OF SERVICE**

I, Michael P. Gaetani, Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on March 4, 2022, I caused to be served a true and correct copy of the foregoing document titled Corrections Defendants' Brief in Support of Their Motion to Dismiss to the following:

**VIA U.S. MAIL**
**Smart Communications/PADOC**
**Dereyk L. Morris, JE-0645**
**SCI Greene**
**PO Box 33028**
**St. Petersburg, FL 33733**
*Pro Se Plaintiff*

      *s/ Michael P. Gaetani*
**MICHAEL P. GAETANI**
Deputy Attorney General