IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION



| | |
|---|---|
| DEREYK L. MORRIS,<br><br>        Plaintiff<br><br>vs.<br><br>SUPERINTENDENT MICHAEL ZAKEN,<br>DEPUTY STEPHEN BUZAS, CAPTAIN<br>KENNEDY, MAJOR  SWITZER, CAPTAIN<br>HINTEMYER, LIEUTENANT  JUAREZ,<br>C/O 1  FERGUSON, C/O 1  STEWART,<br>SECRETARY JOHN E. WETZEL,<br>DEPUTY MARK DIALESANDRO,<br>TAMMY FERGUSON, REGIONAL<br>DEPUTY SECRETARY; AND TABB<br>BICKLE, EXECUTIVE DEPUTY<br>SECRETARY,<br><br>        Defendants | **2:21-cv-01338**<br><br>RICHARD A. LANZILLO<br>Chief United States Magistrate Judge<br><br>**MEMORANDUM OPINION ON DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**<br><br>**ECF No**. 88 |

## I.    Introduction and Procedural History

Plaintiff, Dereyk L. Morris ("Morris"), a prisoner in the custody of the Pennsylvania

Department of Corrections ("DOC"), has filed a verified Amended Complaint against twelve

named DOC employees.[1]  *See* ECF No. 73.  Morris's fifteen count, 184-paragraph Amended

Complaint asserts nine claims pursuant to 42 U.S.C. § 1983 for violations of his rights under the

First, Eighth, and Fourteenth Amendments to the United States Constitution, and six claims

---

[1] All Defendants except three are employed at the DOC's State Correctional Institution at Greene
("SCI-Greene"), where Morris was previously incarcerated.  They are:  Superintendent Michael
Zaken, Deputy Stephen Buzas, Deputy Mark Dialesandro, Captain FNU Kennedy, Major FNU
Switzer, Captain FNU Hintemyer, Lieutenant FNU Juarez, C/O 1 FNU Ferguson, and C/O 1
FNU Stewart.  For convenience, the Court refers to these Defendants as "SCI-Greene
Defendants."  The remaining three Defendants are:  Secretary John E. Wetzel, Regional Deputy
Secretary Tammy Ferguson, and Executive Deputy Superintendent Secretary Tabb Bickle.  For
convenience, the Court refers to these three Defendants as the "DOC Defendants."

under Pennsylvania state law for negligence (3 claims), assault and battery, intentional infliction

of emotional distress, and conspiracy.  Morris seeks compensatory and punitive damages as well

as declaratory and injunctive relief.  All Defendants are sued in their individual and official

capacities.

Morris initiated this action by filing a motion to proceed *in forma pauperis* on October 7,

2021.  *See* ECF No. 1.  The Court granted that motion and Morris's original complaint was

docketed.  *See* ECF Nos. 5 and 6.  Morris's ten count original Complaint asserted six claims

pursuant to 42 U.S.C. § 1983 for violations of his rights under the First, Eighth, and Fourteenth

Amendments to the United States Constitution, and four claims under Pennsylvania state law for

negligence, assault and battery, intentional infliction of emotional distress, and conspiracy.

Defendants moved to dismiss the complaint (ECF Nos. 22 and 44), which request was

granted in part and denied in part (ECF No. 51).  Morris was granted leave to file an amended

pleading, which he did.  *See* ECF No. 73.

In the Amended Complaint, Morris has substituted Regional Deputy Secretary Tammy

Ferguson and Executive Deputy Secretary Tabb Bickle in place of the John/Jane Doe

Defendants, has added five new claims, and has amended certain claims, where he had been

granted leave to do so.  Defendants[2] again move to dismiss but now only seek dismissal of

certain claims:  the three negligence claims under Pennsylvania tort law (Counts III, IV, and

XV); the claim for assault and battery under Pennsylvania tort law (Claim XII), the claim for

intentional infliction of emotional distress (Claim XIII), the claim for conspiracy under

Pennsylvania tort law (Claim XIV), and the Fourteenth Amendment due process claims that were

_____

[2] The Court notes that the motion was filed on behalf of all Defendants, except C/O Ferguson.

2

previously dismissed with prejudice, but have been reasserted by Morris in the Amended

Complaint (Claim XI).  Morris filed what best can be described as a succinct response:

> 1.)  Defendants' filed motion to dismiss on 9/18/2023.
> 2.)  Plaintiff does not wish to contest this motion and asks this
> court to rule upon the merits of the motion based upon the factual
> record.

*See* ECF No. 96 (quoted verbatim).  The Court notes that at this early stage of the litigation, no

factual record has been developed.  And although Defendants' motion to dismiss is unopposed,

the Court will address the merits of their arguments because Morris is proceeding pro se.  *Angle*

*v. Smith*, No. 1:22-cv-33, 2023 WL 2873255, \*5 (W.D.Pa. Feb. 7, 2023) (citing *Thomas v. Value*

*Realty*, No. 2:15-cv-07877, 2016 WL 9776141, at \*1 (D.N.J. Nov. 30, 2016) (citing *Jones v.*

*Unemployment Comp. Bd. of Review*, 381 Fed. Appx. 187, 189 (3d Cir. 2010) and *Stackhouse v.*

*Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991)) ("The Third Circuit recommends that in the case

of a *pro se* litigant, a district court address a case on the merits even if a motion is unopposed."),

*report and recommendation adopted by* 1:22-cv-33, 2023, 2023 WL 2299304 (W.D.Pa. Mar. 1,

2023).

The matter is ripe for disposition.[3]

---

[3] This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1343, and it can
exercise supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1337.  The parties
have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings
in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.  *See* ECF
Nos. 3, 33, 50, and 93.  The case was originally assigned to Magistrate Judge Cynthia Reed Eddy.
Due to the retirement of Judge Eddy, the case was reassigned to the undersigned, pending the
filling of the vacancy created by Judge Eddy's retirement and further Order of Court.

## II.   Standard of Review

Defendants move to partially dismiss Morris's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss pursuant to Rule 12 (b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  The "court[ ] generally consider[s] only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim" when considering the motion to dismiss.  *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).  *See also Iqbal*, 556 U.S. 662.  Furthermore, a complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional Rule 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41, 78 (1957)).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555.  A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Moreover, a court need not accept inferences

4

drawn by a plaintiff if they are unsupported by the facts as explained in the complaint.  *See*

*California Pub. Employee Ret. Sys. v. The Chubb Corp*., 394 F.3d 126, 143 (3d Cir. 2004) (citing

*Morse v. Lower Merion Sch. Dist*., 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the court accept

legal conclusions disguised as factual allegations.  *See Twombly*, 550 U.S. at 555; *McTernan v.*

*City of York Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept

as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Court of Appeals for the Third Circuit has

articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must
> plead to state a claim.' Second, the court should identify
> allegations that, 'because they are no more than conclusions, are
> not entitled to the assumption of truth.' Finally,' where there are
> well-pleaded factual allegations, a court should assume their
> veracity and then determine whether they plausibly give rise to an
> entitlement for relief.'

*Burtch v. Milberg Factors, Inc*., 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v.*

*Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  This determination is "a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense."

*Iqbal*, 556 U.S. at 679.

Finally, because Morris is proceeding pro se, the allegations in the Amended Complaint

must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v.*

*Kerner*, 404 U.S. 519, 520-521 (1972).  If the court can reasonably read a Morris's Amended

Complaint to state a claim upon which relief can be granted, it will do so despite his failure to

cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or

unfamiliarity with pleading requirements. *See Boag v. MacDougall*, 454 U.S. 364 (1982);

*United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

With these standards in mind, the Court now turns to Morris's Amended Complaint and Defendants' motion to dismiss.

## III.   Factual Allegations[4]

On April 30, 2021, Morris saw several staff, including Defendants Stewart and Ferguson, and several others not named as defendants, "antagonizing inmate Devon Smith [] prior to the start of 'yard' and continued in the yard." Amended Complaint at ¶ 19. These Defendants could be heard "engaging in intense verbal argument with" Smith. *Id*. at ¶ 20. While some of the staff went inside the building, Morris witnessed Defendant Ferguson "slowly walk into the empty cage, directly behind Smith," and began to "disperse a large pressured canister of OC spray on the back of inmate Smith; while yelling – "Your [sic] not so tough now monkey, are you." *Id*. at ¶ 33. Morris claims that Defendant Stewart acted as a "look out" and stood in the building's entrance, holding the door open, "while giggling." *Id*. at ¶¶ 32, 33. Morris "became concerned and scared with this open display of unprovoked abuse" and told Defendant Ferguson that his actions would be reported and that Morris wanted to make an allegation of abuse. *Id*. at ¶ 34. Then, according to Morris, because Morris and others were yelling at Ferguson to stop, he "intentionally started to disperse 'OC spray'" in Morris's direction, causing him and others to suffer its effects and at no time did Defendant Stewart attempt to intervene. *Id*. at ¶¶ 38, 43.

---

[4] The Court accepts as true the facts as they appear in the Verified Amended Complaint and draws all possible inferences from those facts in the light most favorable to Morris. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

Morris asserts that Defendant Juarez "attempted to mask Ferguson's actions as justified due to Smith making threats against staff." *Id*. at ¶ 47. After Smith was escorted into the building, the staff returned to take Morris for medical assessment and decontamination of his eyes. *Id*. at ¶ 48. Morris reported verbally to Juarez and the medical staff "that he was assaulted by defendant Ferguson and wanted to make a formal abuse allegation." *Id*. at ¶ 49. Juarez then told Morris that he was to be escorted to a "strip cage," where he would undergo a strip search. When Morris questioned why he was being stripped searched, Juarez claimed it was "due to another inmate having contraband in the yard." *Id*. at ¶¶ 50, 51.[5] Upon being questioned, Juarez began to make "indirect threats" to Morris, stating, "you can refuse and be made to do it anyway as well as written up or you can strip." *Id*. at ¶ 57.

Morris contends that not all inmates were strip searched upon coming in from the yard, but only those "who were assaulted by defendant Ferguson." *Id*. at ¶ 52. According to Morris, the strip search was a "covert tactic of harassment to manipulate reaction so Ferguson's actions could somehow [be] justified." *Id*. During the strip search, the officer conducting it made Morris repeat certain parts of the strip search "that were the most humiliating several times, "while those in attendance smiled at him for antagonization purposes." *Id*. at ¶¶ 59, 60. Upon returning to his assigned cell, Morris began drafting complaints pursuant to the DOC's abuse allegation policy and PREA/sexual harassment policy. These complaints were forwarded to Defendants Zaken, Buzas, Dialesandro, Hintemyer, and non-defendant Tracey Shawley, as well as to the bureau of investigations and intelligence. *Id*. at ¶ 62.

---

[5] According to the Amended Complaint, Juarez told Morris that Smith had contraband, a bottle, in the yard. Amended Complaint, at ¶¶ 52, 56.

In addition to the foregoing, Morris states he has been confined to the Restricted Release List ("RRL") since 2018, even though for "most of this time," he has "maintained without negative behaviors or incurring policy/rule infractions ('misconduct reports')." *Id.* at ¶¶ 91-93. Morris asserts that his initial placement in the RRL was never actually explained to him, that he was brought to the RHU in 2018, under investigation, but was never told what he was being investigated for and was then placed in RRL without explanation. *Id.* at ¶ 96. And Morris further contends that this placement is "the product of fraud; meant to harass him covertly," because he "successfully completed the STGMU program in May of 2017." *Id.* at ¶ 95. Moreover, Morris asserts that the RRL "is an indefinite designation to solitary confinement conditions, which can generally only be lifted by the Secretary of Corrections, who was defendant John Wetzel when Plaintiff was initially placed on 'RRL'; but now is determined by defendants Tabb Bickle and Tammy Ferguson." *Id.* at ¶ 100. Morris alleges that the review process is a sham and those prisoners who are on the RRL list are deprived of a number of privileges, amounting to harsh punishment. *Id.* at ¶ ¶ 101 - 108.

**IV.  The Counts**

Morris asserts the following fifteen claims:

• Count I:  Eighth Amendment claim for deliberate indifference against DOC Defendants, *see id.*, ¶¶ 123 - 25;

• Count II:  Fourteenth Amendment due process claim against DOC Defendants, *see id.*, ¶¶ 126 – 130;

• Count III:  Negligence claim under Pennsylvania tort law against DOC Defendants, *see id.*, ¶¶ 131-133;

• Count IV:  Negligence claim under Pennsylvania tort law against SCI-Greene Defendants, *see id.*, ¶¶ 134 - 38;

• Count V:  Fourteenth Amendment discrimination claim against DOC Defendants, *see id.*, ¶¶ 139-141;

• Count VI:  First Amendment retaliation claim against Defendants Ferguson and Juarez, *see id.*, ¶¶ 142 - 146;

• Count VII:  Eighth Amendment claim for excessive force against Defendant Ferguson *see id.*, ¶¶ 147-49;

• Count VIII: Eighth Amendment claim for failure to train and supervise against the SCI-Greene Defendants, *see id.*, ¶¶ 150 - 53;

• Count IX:  Eighth Amendment claim for deliberate indifference against DOC Defendants, *see id.*, ¶¶ 154 - 56;

• Count X:  Eighth Amendment claim for failure to protect against Defendant Stewart, *see id.*, ¶¶ 157 - 59;

• Count XI:  Fourteenth Amendment claim for procedural and substantive due process against all named defendants except Stewart, *see id.*, ¶¶ 160 - 66;

• Count XII:  Assault and Battery claim under Pennsylvania tort law against Defendant Ferguson, *see id.*, ¶¶ 167 - 69;

• Count XIII:  Intentional Infliction of Emotional Distress ("IIED") claim under Pennsylvania tort law against all defendants, *see id.*, ¶¶ 170 - 73;

• Count XIV:  Conspiracy claim under Pennsylvania tort law against all defendants, *see id.*, ¶¶ 174-179; and

 • Count XV:  Negligence claim under Pennsylvania tort law against all defendants, *see id.*, ¶¶ 180 – 84.

**V.  Discussion**

Defendants argue that (1) the state law claims raised in Counts III, IV, XII, XIII, XIV, and XV should be dismissed because the Defendants enjoy state sovereign immunity as to those claims and (2) the due process claims raised in Claim XI should be dismissed to the extent they previously were dismissed with prejudice.  The Court will address these arguments in turn.

A.  <u>State Sovereign Immunity</u>

In general, employees of the Commonwealth of Pennsylvania acting within the scope of their duties enjoy sovereign immunity.  *Angle*, 2023 WL 2873255, at *8 (citing *Walton v.*

*Harkleroad*, No. 2:13-cv-1109, 2016 WL 11480713, at *7 (W.D. Pa. Mar. 3, 2016) (*citing* 1 Pa.

C.S. § 2310)).  And although the Pennsylvania General Assembly "has waived sovereign

immunity for claims of negligence against Commonwealth employees in a very limited and

express set of circumstances," it has not done so for intentional torts.  *Id.*  (citing 42 Pa. C.S. §

8522(b)).[6]  *See Kull v. Guisse*, 81 A.3d 148, 157 (Pa. Comm. Ct. 2013) ("[S]tate employees do

not lose their immunity for intentional torts, provided they are acting within the scope of their

employment.") (citations omitted).  Consequently, sovereign immunity "shields Commonwealth

employees from liability when their actions: (1) cannot fit into one of the nine statutory

exceptions in § 8522; (2) are not negligent; and (3) occurred when acting within the scope of his

or her employment."  *Angle,* 2023 WL 2873255, at *8 (*quoting Tibbens v. Snyder*, No. 1: 18-cv-

2112, 2020 WL 5372097, at *5 (M.D. Pa. June 24, 2020) (*citing Kintzel v. Kleeman*, 965

F.Supp.2d 601, 606 (M.D. Pa. 2013)), *report and recommendation adopted*, No. 1: 18-cv-2112,

2020 WL 5370024.  Under Pennsylvania law:

> Conduct of [an employee] is within the scope of employment if,
> but only if: (a) it is of the kind he is employed to perform; (b) it
> occurs substantially within the authorized time and space limits;
> (c) it is actuated, at least in part, by a purpose to serve the
> [employer], and (d) if force is intentionally used by the [employee]
> against another, the use of force is not unexpectable by the
> [employer].

*Fought v. City of Wilkes-Barre, Pennsylvania,* 466 F. Supp.3d 477, 521 (M.D.Pa. 2020) (quoting

Restatement (Second) of Agency § 228(1) (1958)).  An employee can be found to be acting

within the scope of their employment even where the employee acts intentionally or criminally.

---

[6] Specifically, the General Assembly has waived immunity in cases of: (1) vehicle liability; (2)
medical-professional liability; (3) care, custody or control of personal property; (4)
Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous
conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard
activities; and (9) toxoids and vaccines. 42 Pa. C.S.A. § 8522.

*Tibbens*, 2020 WL 5372097, at \*5.  Conduct falls outside the scope of employment if the conduct is done in an outrageous manner.  *Abney v. Younker*, No. 1:13-CV-1418, 2019 WL 7812383, at \*9 (M.D. Pa. Oct. 3, 2019), *report and recommendation adopted*, No. 1:13-CV-01418, 2020 WL 488894 (M.D. Pa. Jan. 30, 2020).

> 1. *The Amended Complaint fails to allege facts sufficient to support state law negligence claims against the DOC Defendants (Count III)*

"In order to prevail on a cause of action in negligence under Pennsylvania law, a plaintiff must establish: (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another." *Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360, 1366 (3d Cir. 1993).

Morris alleges in Count III of the Amended Complaint that the DOC Defendants were negligent in failing to use reasonable care in "initiating, continuing and promoting the dangerous use of solitary confinement, . . . ."  Amended Complaint, at ¶ 132. There is nothing in the Amended Complaint from which a reasonable factfinder might infer that the DOC Defendants were not acting within the scope of their employment. *See Mitchell v. Luckenbill*, 680 F.Supp.2d 672, 682 (M.D. Pa. 2010) (identifying the requirements for an action to fall within the scope of employment under Pennsylvania law).  The actions taken by the DOC Defendants were actions that were taken in their capacities as DOC Secretary (Wetzel), DOC Regional Deputy Secretary (Tammy Ferguson), and DOC Executive Deputy Secretary (Bickle).  Thus, sovereign immunity applies.  Defendants' motion will be granted as to Count III of the Amended Complaint and Count III will be dismissed.

> 2. *The Amended Complaint fails to allege facts sufficient to support state law negligence claims against SCI-Greene Defendants Zaken, Buzas, Dialesandro, Kennedy, Switzer, Hintemyer, but does allege facts sufficient to support state law*

11

*negligence claims against SCI-Greene Defendants Ferguson and Stewart (Count IV)*

Count IV of the Amended Complaint contains three separate negligence claims:

a.  Defendants Zaken, Buzas, Dialesandro, Kennedy, Switzer, and Hintemyer "were all negligent when they failed in their obligations to ensure that defendant Ferguson was properly trained and supervised with regards to the use of force policy . . . as well as failed to properly train and supervise defendant Juarez on ethics and policy DC-ADM 008. . . ." *Id.* at ¶ 135;

b.  Defendant Stewart was negligent for failing to intervene while "defendant Ferguson assaulted plaintiff and several others . . . ." *Id.*; and

c. Defendant Ferguson "failed to use reasonable care, spraying Plaintiff with a chemical agent without just cause or within policy . . . ." *Id.*

As to the negligence claims against SCI-Greene Defendants Zaken, Buzas, Dialesandro, Kennedy, Switzer, and Hintemyer, there is nothing in the Amended Complaint from which a reasonable factfinder might infer that these SCI-Greene Defendants were not acting within the scope of their employment in training and supervising either Defendant Ferguson or Defendant Juarez.  Thus, sovereign immunity applies.  Defendants' motion will be granted and the state law negligence claims against SCI-Greene Defendants Zaken, Buzas, Dialesandro, Kennedy, Switzer, and Hintemyer will be dismissed.

However, the record at this time is not sufficiently developed to determine whether the actions of SCI-Greene Defendants Ferguson or Stewart fell within the scope of their employment.  Thus, under the circumstances of this case, whether SCI-Greene Defendants Ferguson and Stewart are entitled to sovereign immunity on this state law negligence claim is an issue that should be addressed after the close of discovery as a dispositive motion.  Defendants'

motion will be denied as to the negligence claims against SCI-Greene Defendants Ferguson and Stewart and these claims shall proceed to discovery.

>   3. *The Amended Complaint alleges facts sufficient to support a state law assault and battery claim against Defendant Ferguson (Count XII)*

Defendants are correct that, as a DOC employee, SCI-Greene Defendant Ferguson is entitled to immunity for intentional tort claims like assault and battery if committed within the scope of his employment. *See, e.g., Brown v. Smith*, No. 1: 18-cv-00193, 2019 WL 2411749, at *4 (W.D. Pa. June 7, 2019) (noting that assault and battery do not fall within the § 8522 exceptions). However, courts in this Circuit have held "that intentionally tortious conduct which is 'unprovoked, unnecessary, or unjustified by security concerns or penological goals' does not fall within the scope of employment for purposes of sovereign immunity." *Angle*, 2023 WL 2873255, at *8 (citations omitted).

"Under Pennsylvania law, an assault occurs when one acts with the intent to place another in reasonable and immediate apprehension of harmful or offensive contact, and that act does cause such apprehension. A battery is an intentional offensive bodily contact." *See Zimmerman v. Schaeffer*, 654 F. Supp. 2d 226, 255 (M.D. Pa. Aug. 17, 2009) (citations omitted). Courts in the Third Circuit have held that "a correctional officer is not acting within the scope of his or her employment, and thus not entitled to the protection of sovereign immunity, when they assault an inmate without justification." *Abney*, 2019 WL 7812383, at * 9 (collecting cases); *see also Gray v. Wakefield*, No. 3:CV-09-0979, 2014 WL 2526619, at *4 (M.D. Pa. June 4, 2014) (explaining that, where the use of force by corrections officers is unprovoked, unnecessary, and unjustified by security concerns or penological goals, it does not, as a matter of law, fall within the scope of employment); *Robus v. Pennsylvania Dep't of Corr.*, No. CIV A. 04-2175, 2006 WL 2060615, at *8 (E.D. Pa. July 20, 2006) ("[I]n Pennsylvania, 'an assault committed by an

employee upon another for personal reasons . . . is not actuated by an intent to perform the business of the employer and, as such, is not within the scope of employment.' " (quoting *R.A. ex rel. N.A. v. First Church of Christ*, 748 A.2d 692, 700 (Pa. Super. 2000))); *but see id.* at * 9 ("As for the final requirement, if Robus's allegations are true, the force used by Hardnett and Humphrey and ordered by DiGuglielmo was reprehensible, but not entirely unexpectable. As one court observed in a case involving guards who severely beat an inmate, '[s]uch acts, while barbaric, do not represent such a great departure from the roughhewn reality of a correction officer's daily routine as to fall outside of the scope of . . . employment.' " (quoting *Pizzuto v. County of Nassau*, 239 F.Supp.2d 301, 315 (E.D.N.Y. 2003))).

The record is not sufficiently developed to determine whether SCI-Greene Defendant Ferguson's use of force fell within the scope of his employment. Thus, the same allegations that support an excessive force claim against SCI-Greene Defendant Ferguson also state a claim of assault and battery under Pennsylvania law. *See Zimmerman v. Schaeffer*, 654 F. Supp. 2d 226, 255 (M.D. Pa. Aug. 17, 2009). Defendants' motion will be denied as to the state law assault and battery claim against SCI-Greene Defendant Ferguson and that claim shall proceed to discovery.

> 4. *The Amended Complaint fails to allege facts sufficient to support state law IIED claims against the DOC Defendants or the SCI-Greene Defendants, with the exception of SCI-Greene Defendants Ferguson and Juarez (Count XIII)*

Morris asserts two separate IIED claims.[7] First, he claims that the DOC Defendants intentionally inflicted emotional distress on him when they (1) initially placed him on RRL status

---

[7]The Pennsylvania Supreme Court has never explicitly recognized the tort of IIED under Pennsylvania law. *See, e.g., Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000). The Court of Appeals for the Third Circuit, however, has predicted that the Supreme Court of Pennsylvania would adopt IIED as a cause of action as set forth in Section 46 of the Restatement (Second) of Torts. *Williams v. Guzzardi*, 875 F.2d 46, 50-51 (3d Cir. 1989) (discussing *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979) (en banc)).

and (2) have continued his placement for several years knowing the potential for serious harm. Amended Compl., at ¶ 171. He also asserts that the SCI-Greene Defendants inflicted emotional distress "when they circumvented his sexual harassment and assault claims against Juarez and Ferguson, and [i]mpeded any real investigation." *Id.* at ¶ 172.

Like assault and battery, IIED is an intentional tort, and, as such, falls outside the exceptions enumerated in § 8522. Under Pennsylvania law, "[t]o prevail on an intentional infliction of emotional distress claim, a plaintiff must show: (1) the conduct of defendant was intentional or reckless; (2) the conduct of defendant was extreme and outrageous; (3) defendant's conduct caused emotional distress; and (4) the distress was severe." *Sabo v. UPMC Altoona*, 386 F. Supp.3d 530, 556 (W.D.Pa. 2019) (citing *Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000)). The Pennsylvania Superior Court defined "outrageous" and "extreme" as:

> The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in any civilized society. It has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort.

*Reardon v. Allegheny College*, 926 A.2d 477, 488 (Pa. Super. Ct. 2007). "It is the court's responsibility to determine if the conduct alleged in a cause of action reaches the requisite level of outrageousness." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1487 (3d Cir. 1990).

15

a.    DOC Defendants

There is nothing in the Amended Complaint from which a reasonable factfinder might infer that the DOC Defendants were not acting within the scope of their employment when Morris was initially placed on RRL or their decision to continue Morris in solitary confinement. The actions taken by the DOC Defendants were actions taken in their capacities as DOC Secretary (Wetzel), DOC Regional Deputy Secretary (Tammy Ferguson), and DOC Executive Deputy Secretary (Bickle). And while the DOC Defendants' actions may represent a constitutional violation, the actions do not rise to the level of extreme or outrageous conduct necessary to support an IIED claim. Indeed, the extreme and outrageous requirement of an IIED claim is a higher standard than "deliberate indifference." *Bryan v. Erie Cty. Office of Children & Youth*, 861 F. Supp. 2d 553, 587 (W.D. Pa. 2012). Accordingly, Defendants' motion will be granted as to the state law IIED claim against the DOC Defendants and that claim will be dismissed.

b.    SCI-Greene Defendants

Morris claims that the actions of the SCI-Greene Defendants caused him "extreme stress, anxiety, depression, and to constantly fear for his life and safety, when they circumvented his sexual harassment and assault claims against Juarez and Ferguson and empeded (sic) any real investigation." Amended Complaint, at ¶ 172. The Amended Complaint states that Morris forwarded written complaints to Defendants Zaken, Buzas, Dialesandro, and Hintemyer, and to the bureau of investigations and intelligence, and that Defendant Switzer, as "major of the guard," was made aware of Ferguson's actions both in writing and in person. Amended Compl., at ¶¶ 61, 62, 80. While Morris may not be happy with the responses, or lack thereof, he received to his complaints, there is nothing in the Amended Complaint from which a reasonable factfinder

might infer that the actions of these SCI-Greene Defendants constitute the outrageous and extreme conduct necessary to state an IIED claim.  The facts alleged simply would not cause "an average member of the community," to "arouse his resentment against the actor[s], and lead him to exclaim, 'Outrageous!'." *Kazatsky v. King David Mem'l Park*, 527 A.2d 988, 994 (Pa. 1987). Accordingly, Defendants' motion will be granted as to the IIED claims against the SCI-Defendants, with the exception of SCI-Greene Defendants Ferguson and Juarez.

However, the legal sufficiency of Morris's claims against Defendants Ferguson and Juarez is a much closer call.  Accepting the facts as alleged in the Amended Complaint as true, as the Court must at this stage of the litigation, a factfinder may reasonably infer the actions of SCI-Defendants Ferguson and Juarez constitute the outrageous and extreme conduct necessary to state an IIED claim.  The facts alleged are minimally sufficient to state an IIED claim against SCI-Greene Defendants Ferguson and Juarez at the pleading stage of this action and the record at this time is not sufficiently developed to determine whether the actions of Defendants Ferguson or Juarez rise to the level of extreme or outrageous conduct necessary to support an IIED claim. Defendants' motion will be denied as to the state law IIED claims against SCI-Greene Defendants Ferguson and Juarez and those claims shall proceed to discovery.

> 5. *The Amended Complaint does not allege facts sufficient to support a state law conspiracy claim (Count XIV)*

Morris contends that all Defendants participated in a conspiracy under Pennsylvania law to deprive him of his constitutional rights.  Even if sovereign immunity does not apply, more critically, Morris has failed to state a plausible claim for relief.

"The sufficiency of a claim for civil conspiracy under state law, brought in federal court, is governed by the Federal Rules of Civil Procedure." *Adams v. Teamsters Local 115*, 214 F. App'x 167, 176 (3d Cir. 2007).  Applying the pleading standards set forth in *Iqbal* and *Twombly*,

17

the Court of Appeals for the Third Circuit has repeatedly acknowledged that "mere conclusory

allegations of deprivations of constitutional rights are insufficient to state a conspiracy claim."

*Tindell v. Beard*, 351 F. App'x 591, 594 (3d Cir. 2009).  Rather, the plaintiff "must provide some

factual basis to support the existence of a conspiracy:  agreement and concerted action."

*Capogrosso v. The Supreme Court of the State of New Jersey*, 588 F.3d 180, 184-185 (3d Cir.

2009).

The allegations of civil conspiracy under state law in the Amended Complaint are that:

1. "Defendants Ferguson and Stewart conspired to use force on inmate Smith which said conspiracy resulted in several others being illegally attacked against policy and law to include plaintiff." Amended Complaint, at ¶ 175;

2. "Defendant Juarez and those under his command conspired to cover up the assault by Defendants Ferguson and Stewart by manipulating unauthorized strip search procedures; aiming to get a negative reaction; through covert sexual harassment and humiliation". *Id.* at ¶ 176;

3. "Defendants Zaken, Buzas, Dialesandro, Kennedy, Switzer and Hintemyer all conspired to aid the cover up of both defendant Juarez's sexual harassment and Ferguson's unauthorized use of force against plaintiff, circumventing investigations, denying appropriate review process or plaintiff of his right to pursue criminal charges against Ferguson." *Id.* at ¶ 177; and

4. "Defendant Wetzel, Bickle and Ferguson all conspired to officially oppress and harm plaintiff with prolonged solitary confinement under conditions known to be detrimental to his overall health and safety." *Id.* at ¶ 178.

There is nothing in the Amended Complaint, however, from which a reasonable factfinder might

infer that the Defendants formulated and executed an agreement to violate Morris's

constitutional rights. *Trainor v. Overmyer*, No. 1:20-cv-0260, 2021 WL 5770215, at * 9

(W.D.Pa. Dec. 6, 2021). The law is clear: "bare allegations of wrongdoing by a Defendant,

without any substantiating proof of an unlawful agreement, are insufficient to state a conspiracy

claim." *Id.* Such is the case here.  Defendants' request to dismiss this claim will be granted and

the state law conspiracy claim will be dismissed.

      6. *The Allegations of Count XV are duplicative of Other Claims in the Amended Complaint (Count XV)*

The allegations of state law negligence in Count XV are identical to the state law negligence claims raised in Counts III and IV of the Amended Complaint. Thus, Defendants' request to dismiss this claim will be granted and Count XV will be dismissed as duplicative.

    B.    <u>Fourteenth Amendment Due Process Claims</u>

Count XI of the Amended Complaint contains several Fourteenth Amendment claims against numerous defendants, several of which previously were dismissed with prejudice. Defendants move to dismiss these reasserted claims.

      1. *Procedural Due Process Claim against Hintemyer, Buzas, Dialesandro, Kennedy, Switzer, Zaken, and Juarez*

In Paragraph 160 of the Amended Complaint, Morris asserts that SCI-Greene Defendants Hintemyer, Buzas, Dialesandro, Kennedy, Switzer, Zaken, and Juarez "violated plaintiff's due process rights when they either intentionally failed to adequately investigate sexual harassment claims against Juarez and circumvented the claims against Juarez. . . ." Amended Compl., at ¶160. Morris made a similar claim in his original claim against SCI-Greene Defendants Hintemyer, Buzas, and Zaken, but has expanded his claim to now also include SCI-Greene Defendants Dialesandro, Kennedy, Switzer, and Juarez. Morris's claim in the original Complaint was dismissed with prejudice. *See* Memo Op., at p. 15 (ECF No. 51). For all the same reasons that Morris's claim in the original complaint was dismissed, this reasserted Fourteenth Amendment due process claim against SCI-Greene Defendants Hintemyer, Buzas, Dialesandro, Kennedy, Switzer, Zaken, and Juarez also will be dismissed with prejudice.

      2. *Due Process claim against the DOC Defendants*

In Paragraph 161 of the Amended Complaint, Morris contends that the DOC Defendants violated his "right to due process when they initially placed him on [the] RRL without explanation . . . and then continued on said status for years without ever providing the opportunity to refute the allegations or appeal said status . . . ." Amended Compl., at ¶161. Morris made similar claims in his original Complaint. With respect to the procedural due process claim regarding the initial placement on the RRL, Morris was granted leave to amend to state facts which support his claim that his initial placement on the RRL violated due process. *See* Memo. Op. at p. 17. Defendants' request to dismiss the due process claims regarding continued status on the RRL was denied.[8]

Morris has now included factual allegations in his Amended Complaint which support his claim that his initial placement on the RRL violated due process. For example, he contends that,

- it was never explained to him why he was placed on the RRL, but that a request response from his counselor stated he was assigned due to an unsuccessful discharge from the Security Threat Group Management Unit ("STGMU") and continued STG activity, which, according to Morris, is untrue because he was successfully discharged from STGMU in May of 2017 (Amended Compl., ¶¶ 94, 95); and

- he was brought to the RRL in 2018 "under investigation, but never told what he was being investigated for and was subsequently told he was placed on RRL, without explanation as to why," *id.,* at ¶ 96.

The Court finds that the facts alleged in the Amended Complaint are minimally sufficient to state a due process claim regarding Morris's initial placement on the RRL. Defendants' motion to dismiss this claim will be denied and the due process claim against the DOC Defendants regarding Morris's initial placement on the RRL list shall proceed to discovery.

---

[8] In the instant motion to dismiss, Defendants do not challenge Morris's claim that his continued or prolonged placement on RRL violates his due process rights. Thus, this claim will proceed to discovery.

### 3. *Due Process Claim Against DOC Defendants (Access to Rehabilitation)*

In Paragraph 162 of the Amended Complaint, Morris alleges that the DOC Defendants "discriminated against plaintiff by providing him no access to adequate rehabilitation and mental health programming / treatment due to his RRL status . . ." Amended Compl., at ¶162. This is the same claim as Morris made in his original Complaint, and the claim was dismissed with prejudice explaining that "as it is not clear how this claim by Plaintiff is any different than his Eighth Amendment claim or his other Fourteenth Amendment claim regarding his continued placement on RRL status." Memo. Op. at 18 (ECF No. 51). Accordingly, Defendants' motion to dismiss this reasserted claim will be granted and this claim will be dismissed with prejudice.

### 4. *Due Process Claims Against SCI-Greene Defendants Ferguson and Juarez*

In Paragraph 163 of the Amended Complaint, Morris alleges that SCI-Greene Defendant Ferguson violated his right to due process when he "initiated unwarranted force against him outside of written policy, law, and ethics" and in Paragraph 164, Morris alleges that SCI-Greene Defendant Juarez violated his right to due process "when he initiated strip search procedures to manipulatively harass plaintiff outside of law and policy." Amended Compl., at ¶¶ 163-64. As with his due process claim contending no access to adequate rehabilitation and mental health programming / treatment due to his RRL status, it is not clear how this claim by Plaintiff is any different than his Eighth Amendment claims. Accordingly, Defendants' motion to dismiss will be granted and Morris's due process claims against SCI-Greene Defendants Ferguson and Juarez will be dismissed with prejudice.

### 5. *Due Process Claim against Zaken, Buzas, Dialesandro, Hintemyer, Switzer and Kennedy*

In Paragraph 165 of the Amended Complaint, Morris alleges that SCI-Greene Defendants Zaken, Buzas, Dialesandro, Hintemyer, Switzer, and Kennedy violated his due process rights

"when he was blocked from contacting the state police" to pursue charges against Ferguson and Juarez.  Amended Compl., at ¶ 165.  This is the same claim that Morris raised in his original Complaint which was dismissed with prejudice because, as previously explained "[a]fter conviction, the Eighth Amendment serves as the primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified."  Memo. Op. at 18 (citing *Brooks*, 204 F.3d at 106).  Accordingly, Defendants' motion to dismiss this reasserted claim will be granted and this due process claim again will be dismissed with prejudice.

## VI.    Leave to Amend

The Court of Appeals has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment unless an amendment would be inequitable or futile.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).  The Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  And though "the grant or denial of an opportunity to amend is within the discretion of the District Court," it may not "outright refus[e] to grant the leave without any justifying reason appearing for the denial." *Id.* These instructions are equally applicable to pro se litigants and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

Morris previously was given leave to amend his original complaint and was advised of the deficiencies therein.  Thus, the Court will deny Morris leave to amend as he has been provided ample opportunity to correct the deficiencies and has failed to do so.

## VII.  Conclusion

For the foregoing reasons, the Court GRANTS in part and DENIES in part the Defendants' motion to dismiss (ECF No. 88).  The following claims will be dismissed with prejudice: (1) Count III – state law negligence claims against the DOC Defendants; (2) Count IV – state law negligence claims against SCI-Greene Defendants Zaken, Buzas, Dialesandro, Kennedy, Switzer, and Hintemyer; (3) Count XI (in part), – Fourteenth Amendment due process claims against (i) SCI-Greene Defendants for failing to investigate claims, (ii) the DOC Defendants for failure to provide access to rehabilitation and mental health programming / treatment; (iii) Defendants Ferguson and Juarez; and (iv) SCI-Greene Defendants Zaken, Buzas, Dialesandro, Hintemyer, Switzer, and Kennedy for allegedly blocking Morris's attempts to contact the state police; (4) Count XIII - state law IIED claims against the DOC Defendants and the SCI-Greene Defendants (with the exception of SCI-Greene Defendants Ferguson and Juarez); (5) Count XIV – state law conspiracy claims against all defendants; and (6) Count XV – state law negligence claims against all defendants (as duplicative of Counts III and IV).

The motion is DENIED as to: (1) Count IV – state law negligence claims against SCI-Greene Defendants Ferguson and Stewart; (2) Count XI (in part) – Fourteenth Amendment due process claim against the DOC Defendants regarding Morris's initial placement on the RRL list; (3) Count XII - state law assault and battery claim against SCI-Greene Defendant Ferguson; and (4) Count XIII - state law IIED claims against SCI-Greene Defendants Ferguson and Juarez.

DATED this 15th day of May, 2024.

BY THE COURT:

RICHARD A. LANZILLO
Chief United States Magistrate Judge